The next case on the calendar is Walsh v. The City of New York Good morning, Your Honors. May it please the Court, my name is Emma Grunberg and I represent the appellants in this case. This case involves a man who admittedly punched another man in the face, hard enough to break the skin. In a situation like this, where the elements of assault have been met, the law is clear. The officers may arrest the suspect unless facts known to them conclusively establish the existence of an affirmative defense. That is a high bar and it was not met here. First, the officers didn't know what happened between Mr. Vidal approaching the hotel and the plaintiff punching him in the face. You had a jury trial, right? That's right. You took all of this to a jury and they were competing contentions and arguments on one side and arguments on the other and the jury reached a conclusion and as you know, under our rules, we have a different equation. We are bound by that jury verdict unless you can convince us not that you have a different narrative, but that jury reached a conclusion that no rational jury could reach. That's right, Your Honor. We believe that no rational juror could find lack of probable cause in this case. To be clear, we're not saying that the jury made erroneous factual findings. This is a sufficiency of the evidence argument. We're saying that as the standard is very deferential, taking all inferences in favor of the plaintiff and now we know exactly what all the disputes are and we can do that. We have a full record. Taking all those inferences in favor of the plaintiff- only because he would not drop the charges against Vidal. Is that not so? I think the jury could certainly have found that those subjective motivations were at play. Subjective motivations are not at issue in a finding of objective probable cause. Do you mean we ignore that that was what the motivation was? I do, Your Honor. In the 1983 context, and that doesn't mean that there can be no consequences for police officers who arguably act in a troubling way, but in the 1983 context, the right at issue is the Fourth Amendment right to be free from arrest without probable cause. And so here you go to the objective facts known to the officers at the time. And those facts were that the plaintiff admittedly punched Mr. Vidal in the face hard enough to break the skin. Those facts also included Mr. Vidal being brought to the precinct in handcuffs under arrest and Mr. Walsh was invited to walk over to file a complaint. Well, Your Honor, I don't really believe that the manner in which the two people were brought to the precinct really makes a difference in what facts the officers knew. But he added to everything else. In other words, Walsh was not arrested at the scene. Vidal was. He wasn't. Lieutenant Lunsford, who was not found liable, testified that he took the plaintiff's ID and directed him to go to the precinct. Both because- He took the ID. Yes. And gave an instruction to come to the precinct and the investigation would continue there. Exactly. And he specifically testified he believed that he had a cross-complaint situation, that he might have to arrest Walsh, and that he had his ID, he had his address, and that if Walsh disobeyed the instruction to go to the precinct, he could find him at his place of work in the next few days. Was he told to go to the precinct to file a complaint? Was that part of it? I don't think that's clear from the record. He was instructed to go to the precinct and his ID was taken. But, again, I just want to be clear. The manner in which these two men went to the precinct really goes more towards what the subjective motives of the officers may have been at the time. And, you know, Vidal was arrested immediately because he was behaving aggressively at the scene. And we don't dispute that. But after he was placed in handcuffs because of his behavior, Lieutenant Lunsford spoke to the plaintiff. And, excuse me, spoke to Mr. Vidal. I spoke to both of them. And Mr. Vidal has said, the plaintiff assaulted me. And he had a corroborating injury on his face that was openly bleeding and required multiple stitches later that night. So that gave probable cause to believe that the plaintiff committed third-degree assault. Now, under this court's precedent in Curley, in Garcia, in Jocks v. Tavernier, as we discuss in our brief, the question in that situation, that specific situation, is whether the facts known to the officer is conclusively established in affirmative defense. This is a Fourth Amendment claim. Exactly. So the subjective motivations of the officers, as the Supreme Court has repeatedly said, are irrelevant. We focus on whether there was objective probable cause. Is that an accurate statement of the law? Absolutely, Your Honor. So it's your contention that at the conclusion of the plaintiff's case, despite the evidence of improper motivation on the part of some of the officers at the precinct, if that was improper motivation, the district court should have entered a verdict in favor of the city. That's right. Because any argument that there was not probable cause was not grounded in the evidence that had been presented. That's right, Your Honor. And I think the argument that the district court seemed to find persuasive, and perhaps the jury did too, is that the plaintiff's explanation for what he did, for punching Mr. Vidal in the face, was plausible. It wasn't completely ridiculous, and we don't argue that it was. He was on duty. He was a security guard. And there was a door that appeared to say, exit only, leading into the hotel lobby. But the standard, as this court has articulated in Garcia, is not whether the plaintiff has a theoretically plausible claim of innocence, but whether that claim is clearly established by facts known to the officers. And here, you know, just because you're a security guard does not give you carte blanche to punch members of the public in the face. To be clear, your theory is that he had probable cause to arrest both men, the officer at the scene. Exactly. Exactly. And they could have decided to arrest only Vidal, but that doesn't mean that the arrest of the plaintiff … But the jury have found that there wasn't probable cause. I don't believe any rational juror could find lack of probable cause on this record because there was no clear evidence presented to the jury of an affirmative defense. Well, there was evidence that it was self-defense and that that would be believable. But the standard isn't really whether it may have been believable or plausible. The standard is whether … Certainly, a reasonable jury could clearly find that the officers arrested Walsh because he would not drop the charges. That's part of the factual scenario. That's part of what's happened, and you're suggesting that we ignore that. That's all irrelevant. I'm suggesting that under 1983, it is an objective inquiry. Why was that all admitted into trial? I think for two reasons. First, there was a conspiracy claim that wasn't dismissed until the close of evidence, and second, that it could theoretically be admissible on the malice prong for malicious prosecution. However, lack of probable cause is also an element of malicious prosecution, as is initiation. And here, certainly to turn to the malicious prosecution claim, I don't believe there's any evidence of initiation. The police officers do not generally initiate a prosecution. There has to be some evidence that they communicated to prosecutors, they made out a criminal complaint, they encouraged the prosecution to go forward. Here, the officer who was a non-defendant, who was originally named as a defendant but then voluntarily dismissed from the case, did testify at trial, and there was no evidence elicited from him by the plaintiff to support this theory that he was just a pawn for the defendant officer's sort of goals here. And help me understand the record. The jury heard evidence that Walsh had punched Bedalia. Walsh is now at the precinct. He's not placed under arrest. He's not placed under arrest, accepting his testimony, until it's apparent that he's refused to drop his complaint. Wasn't the jury entitled to take that evidence as possibly some indication that the officers lacked probable cause, that they must have known something else? Because they did not arrest him before that. They only arrested him after he had refused to drop the complaint. I think, atmospherically, you could say, well, doesn't this indicate that there may not have been probable cause? And so what you do then, as a fact finder, is you go to, well, what are the indicia of objective probable cause here, and is it lacking? And here, on the objective facts known to the officers, I don't believe any reasonable juror could find that it was lacking. They were not required to investigate his claim that it was in self-defense. I think that's clear from this court's case law in Garcia and Jocks and other cases. But they did, actually. Lieutenant Lunsford- Did the jury ask specific questions? I mean, did it have to make a finding as to whether there was probable cause? I don't believe so. I think the jury was just asked about false arrest generally. And I think it is very important here that the district court note- Did the charge say something along the lines of, for the plaintiff to prevail, you must find that the defendants lacked probable cause? Was that part of the- Yes, I think the charge certainly laid out the law correctly. And that's not really the basis for argument. The basis for- So presumably, then, the jury was instructed that it could not rule for the plaintiff unless it found a lack of probable cause. That's right. And it apparently found probable cause for Lieutenant Lunsford, because there's a split verdict. And the way- There could have been some other reason, but- Right. Well, you wonder what reason it could have been. But I think the question here is sufficiency of the evidence on objective probable cause. And the district court was only able to explain the split verdict by talking about subjective motivations. And the question isn't whether the jury was charged correctly. It's what is the evidence that was presented to them. And the evidence presented to them was that the elements of assault were met and that the affirmative defense may have been plausible but was not clearly established. I'll reserve my time for rebuttal. Thank you. May it please the court. My name is Robert Soloway. I represent Plaintiff Appellee Morton Walsh. Your honors have identified several areas in which, such as the court's charge and whether that charge identified for the jury the important issues of probable cause, which were in play with respect to both the false arrest claim and with respect to the malicious prosecution claim, although the burden was different. The city refers to things like atmospherics. But really, what this case is about, and because of your questioning, I really want to focus on this idea of subjectivity more than some of the other things that I sort of had planned to start with. Because the city makes a big deal about subjective motives. And it's true that the law is that even bad motives are irrelevant in the determination of whether probable cause is present. If there's bad motives, that doesn't convert a case with probable cause into a false arrest or a malicious prosecution. Okay, that's fine. That's great. That's the law. But it's also true that bad motives and conduct by the police were amply on display here in the way they treated Morton Walsh. That's another reality of the case. So the city sort of picks that ball up and tries to run with it. And they say that the conclusion by the jury of bad motive must have also clouded the jury's reasoning ability and that they therefore failed to identify the issue that was probable cause. And even the judge's reasoning, they argue in their briefs, was clouded, was disabled, and he didn't understand the issues because he was so confused by the issue of bad intent. But the jury— If we put aside the subjective motivations, you do have Vidala, who clearly was punched in the face, who is making a charge against Walsh. Why isn't that enough for probable cause? I mean, the officers are not expected to conduct a mini-trial right then and there, decide who they believe, and they've got Vidala telling him this. Why isn't that enough to arrest Walsh? Well, it's the single most difficult point for the city in the case. And that is because the single most important fact, which Judge Livington sort of alluded to in one way, is that the police, I think it's fair to say, didn't do anything in furtherance of arresting Walsh until he refused to dismiss his complaint against their former colleague. And so there were many things that happened that the jury heard. Now— But aren't you—aren't we then just speculating about what else they might have known? I mean, my problem with this is it seems very much like our decision in Curley. The police officers arrest a bar owner for assault. He says the bar owner is insistent. This is how many of these cases look, saying, I was trying to break up a fight. He confirmed to the officers that he had punched someone. We said there's no need for a more thorough investigation at this scene. There's probable cause. There are lots of fights where you have probable cause to arrest both, and the legal process will sort it out thereafter. So what does the evidence show? What is in this record that says this is different, Your Honor? This is not that case. This is not that case because this is like Jacques, first of all. And that's a completely different case in which this court has also spoken, in which it's clear that, you know, the facts can— the facts of what occurred have to be identified, and the jury, as the city concedes, was properly charged that the issue is what the police credibly knew and should have known, right? So there's a fight. There's not a fight between two people. Lieutenant Lunsford at the scene knows that it's a security guard doing his job, not letting someone push through him, past him, through the exit door into the hotel. He testifies—he has no reason to doubt, really, what Walsh told him in terms of the truth of what Walsh told him at the scene. At the scene, as the court has pointed out, he arrested Vidal and told Walsh to go to the precinct to file his complaint. That's in the record. Lunsford knew at that time that Vidal had a cut on his face, and he didn't do anything. He didn't say, Mr. Walsh, you're under arrest. He learned nothing new in the precinct, nothing new came out, except a bunch of things that the police did that were intended to coerce Mr. Walsh into dismissing his claims. And that's what happened at the precinct when Vidal was brought in handcuffed. There's evidence that Officer Clark had a conversation with Vidal, which he engineered to be outside the hearing of the arresting officer. He then goes into the room where Mr. Walsh was waiting to file his complaint, and he says, I want to know if you know how things work here in the precinct, but you have to shit-can this arrest. Those were the words he used, meaning you have to dismiss this case. He then comes out of there and goes and has a conversation with Sergeant Roach. And they next have a conversation that involves asking Mr. Vidal whether he wants to file a cross-complaint against Walsh, and that's the first time the word cross-complaint comes up in this record. After Walsh is arrested for refusing to dismiss the charges, Clark is not done, though. He comes into the holding cell where Mr. Walsh is being detained, and he says to him, I have a phone here, your boss is going to call you, and you better do what he says. And Mr. Walsh is heard to say by Clark, I can't do that, John, because I didn't do anything wrong. And Clark then grabs the phone away from him and leaves. Help me understand the record on this. The supervisor, I'm sorry, Mr. Officer Lansford. It's a lieutenant, and his name is Jason Lunsford. Yes, John. Lunsford, Lieutenant Lunsford. He also testified that, was he involved in making an offer to both that if you want to take tonight, you can leave tonight if you're willing to take a summons or a lower charge? He claims that he made the determination that there was a problem. The answer is yes. He said, however, but there's conflicting testimony in that because Officer Clark said that Lunsford had nothing to do with it and that he walked up to Lunsford sometime during the evening and said to him, sir, we want your blessing, Mr. Lieutenant, because we're thinking of filing cross complaints here or dismissing or dismissing the top counts and giving them both sea summonses. And Lunsford, according to Clark, said, do whatever you want. I just want to get out of here. So Lunsford did own the decision for probable cause. But the jury was not bound to accept that based on the fact the facts for probable cause and the decision to offer both parties. If you want to go home tonight, you can take the sea summons. Yes, that was an offer. After Mr. Clark, or Officer Clark, went into the room and said to Mr. Walsh, you have to dismiss this case, but in different words. There were then offers made for both of them to take a sea summons and a disorderly conduct, not an assault, and both go home. Martin Walsh could have gone back to work. Mr. Lunsford could have gone back to whatever it was he was doing. But the jury, it's important because obviously the standard that's been identified here is that the burden is so great on the city that they have to establish an absence of evidence for the plaintiff. That it must be concluded that the verdict was a result of sheer surmise or conjecture. That's the law. Or, on the other hand, that there was such an overwhelming evidence in favor of the city that a reasonable and fair-minded jury could never arrive at a verdict for the plaintiff. This is a properly charged jury. They heard about the probable cause issue from Judge Hellerstein three separate times, unobjected to by the government. Judge Hellerstein charged the law that's being identified here. He said a police officer may rely on a victim's statements or allegations in concluding that there is probable cause to make an arrest. However, if the circumstances raise doubts as to the veracity of what the victim said, the officer must assess the reliability of the victim's statements in the context of all the circumstances known or readily available to the officer. Those circumstances, everything that the police did here, and that's the problem that the city has, dictates that there was not bad motives here and probable cause. There was just bad motives. Now, that's really the problem for the city in the way the case was tried. Mr. Walsh was unimpeached during his testimony, and the police officers were incredible. Their stories were contrived. They didn't hold together. The jury did not credit a single—I'm not saying a single word. The jury did not credit, clearly, the testimony of the officers. Officer Lunsford was simply not as involved. The court even referred to that. He was not as personally involved. He wasn't from that precinct. He was from the 75th Precinct in Brooklyn. He was on duty in that neighborhood because it was New Year's Eve that night. And these two fellows, Roach and Clark—I'm sorry, one was a woman, Sergeant Clark, Sergeant Roach, rather—were held liable because they were 18th Precinct officers, the very same precinct that Mr. Vidala had retired from. He worked together with Officer Clark when they were together. They were longtime colleagues in that precinct. I see my time is up. Unless the court has any questions for me, I will sit down now. Thank you very much. Your Honor, I asked my colleague whether this case is similar to this court's decision in Curley, where a bar owner undisputedly struck another man, leaving a visible injury, and the officers were not required to prove his version of events, that he was just trying to protect his premises, wrong, before arresting him. I think that case is exactly on point here. My colleagues referenced Jocks v. Tavernier as a more relevant case. In Jocks, the defendant officer himself threatened the plaintiff at gunpoint, so surely he should have known that the plaintiff's response in throwing a phone at the officer was not disproportionate self-defense, and also it really happened because he was the one directly involved in the confrontation. However, that same officer was granted partial summary judgment on the plaintiff's other affirmative defense, which was the emergency doctrine, because even that officer who pointed a gun at the plaintiff, therefore allegedly starting the confrontation, hadn't witnessed the facts personally leading to the plaintiff's claim that the emergency doctrine applied. So here, there's no question that none of these officers were involved in the confrontation, and they didn't see anything leading up to when the punch was thrown. So the objective probable cause rests on the fact that there was no fact known to the officers that clearly established any affirmative defense. It may have been plausible, it may have been successful at trial, absolutely, but that's not the standard. We don't require police officers to conduct an adjudication of the reasonableness of a punch to the face at a crime scene, at an alleged crime scene. Your clients testified at trial as to the existence of probable cause, did they not? Yes, Your Honor. And Judge Hallerstein charged the jury that it was the judge of credibility, right? That's right. And that if he found that the officers, that your clients testified, if the jury found your client's adduced testimony that they believe was not credible, they could accept part of it, reject part of it, or reject it all. Didn't he testify? He charged them to that effect, right? I believe so, Your Honor, yes. If the jury didn't believe their testimony with respect to why there was probable cause, they could have on that basis reached the verdict that they did. Could they not have? No, Your Honor. That begs the question, does this record establish probable cause on the undisputed facts? It doesn't really matter what the disputes and testimony were when we take the undisputed facts. And those facts are that there was a punch in the face, that it was admitted, that it caused injury, establishing the elements of assault. And then you go to what did Walsh tell police and what were the corroborating circumstances at the scene that would have established an affirmative defense? And here, those circumstances did not exist. He had a claimed affirmative defense, but it was not so clearly established as this court has held in Garcia, as this court has held in Curley and Jocks v. Duvernier to vitiate the probable cause established by the punch. And, Your Honor, there's always going to be cases where — Lieutenant Lunsford did not make an arrest at the scene. That's correct. He didn't. He took the plaintiff's ID and directed him to go to the station where he would. And at that point, he had Mr. Vidala's complaint that he was assaulted. He saw Mr. Vidala's injury, and he planned to take Walsh's complaint and also potentially arrest him at the station. But, again, it's really not relevant here. What's relevant here is what are the facts known to the officers, the objective facts at the time of the arrest. And Mr. Vidalia did not testify at the trial. He didn't, no. And, you know, we did have a cross-complaint situation here, but what's really the most relevant point is that the punch was admitted. It's not like Vidala said, he punched me, and the plaintiff said, no, I didn't, and it was he said, he said. The punch was admitted. The question was whether it was justified. And whether it is justified for a security guard to punch someone in the face, maybe it is. I do not think that is so clearly obvious as to make an arrest of that person unconstitutional. And that is the real question presented in this appeal. Thank you, Your Honors. Thank you. Thank you both. Well argued. The last case on the calendar, Kennedy v. Strong Memorial Hospital, is on submission. So I'll ask the clerk to adjourn court.